## Tomalonis v. Early American Builders Inc.

C.P. of Berks County, no. 93-3840.

*Arthur S. Klein,* for plaintiff.
*William F. Ochs,* for petitioner, Alan B. Ziegler, Esquire.[1]

LASH, *J.,* January 29, 2003—This matter comes before the court pursuant to the petition of Alan B. Ziegler, Esquire, "to seek leave to apply liened funds to attorney's lien." Petitioner seeks to have this court declare valid a claimed charging lien against two attorney escrow accounts, in satisfaction of attorney's fees incurred. A hearing was held on January 24, 2003. For reasons set forth, this court denies the petition.

Petitioner attorney was originally retained by plaintiff to handle a collection claim against defendant, Early American Builders Inc. Plaintiff and defendant eventually settled the collection matter, with the terms set forth in a written stipulation dated March 29, 1996, approved by the court on April 2, 1996. The settlement required defendant to pay plaintiff the sum of $8,539.36 through

---

1. Neither Early American Builders Inc., the defendant in this case, nor Mogel, Speidel, Bobb & Kershner, attorneys-at-law, joined as a party in this matter by stipulation entered as an order of court on September 20, 2002, participated in the matter at bar.

installment payments, with the payments to be held in escrow by petitioner, pending distribution.

Pursuant to the stipulation, petitioner is currently holding, as escrow agent, the sum of $4,767.08 received as payments from defendant. Additionally, there is a separate fund held by defendant's attorney, Mogel, Speidel, Bobb & Kershner, in the amount of $1,884.84.

Petitioner claims that he, and not his former client, is entitled to these funds for payment of outstanding attorney's fees incurred in representing plaintiff in the collection action. Petitioner claims the entitlement is based on his belief that he has a valid charging lien against the funds, accruing from statements made by plaintiff in response to petitioner's demand to be paid. Plaintiff objects, arguing that there was never an agreement for a charging lien and that the escrowed funds rightly belong to him and not petitioner.

This matter was previously considered and decided by Berks County court, however, within a different context, due to plaintiff filing for bankruptcy. On May 9, 2001, the court denied the petition, and filed an opinion on July 17, 2001. In its opinion, the court stated that petitioner's claim and lien (if any) was rendered null and void by the Bankruptcy Court's discharge order of August 20, 1998, concluding therefore that petitioner was not legally entitled to recover from the escrowed funds. Petitioner appealed the court's decision to the Superior Court of Pennsylvania, who filed a memorandum opinion on June 18, 2002, reversing the trial court and remanding for further proceedings.[2] The Superior Court

2. A copy of the Superior Court opinion is attached as appendix A to this decision. [Not published herein.]

held that, while the underlying debt and judgment for attorney's fees was discharged by the Bankruptcy Court, the lien (if valid) survived the discharge because plaintiff debtor failed to secure an order avoiding the lien. The Superior Court remanded the matter back to this court to determine whether the charging lien exists.

The test for determining whether a charging lien will be recognized and applied appears in the case of *Recht v. Clairton Urban Development Authority,* 402 Pa. 599, 168 A.2d 134 (1961). To establish the lien, petitioner must meet five requirements:

"(1) that there is a fund in court or otherwise applicable for distribution on equitable principles,

"(2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid,

"(3) that it was agreed that counsel look to the fund rather than the client for his compensation,

"(4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised, and

"(5) that there are equitable considerations which necessitate the recognition and application of the charging lien." (At pp. 138-39.)

Plaintiff concedes that elements 1, 2, 4, and 5 have been met by petitioner. The sole question before this court is whether there was an agreement that counsel look to the fund rather than the client for his compensation.

The evidence upon which petitioner relies in support of his claim includes an amended affidavit with attachments filed with the court on May 4, 2001, a second af-

fidavit of Alan B. Ziegler filed September 5, 2002, an affidavit of John A. Fielding III,[3] filed September 5, 2002, and the testimony in open court of petitioner and John A. Fielding III, on January 24, 2003.

From these sources, we deduce the following operative facts:[4] On or about May 27, 1993, plaintiff retained petitioner to represent him in the collection action. Petitioner then memorialized the arrangement by letter of same date. The arrangement was that petitioner would handle the matter at an hourly rate of $95 an hour, requiring a retainer in advance of $500. Out-of-pocket costs would be borne by plaintiff. Petitioner then performed work on behalf of plaintiff resulting in the settlement with defendant. Petitioner claims that as a result of his efforts, he compiled billable hours for which he was not paid. Having not received satisfaction from plaintiff, petitioner resorted to filing his own collection matter against plaintiff at the district justice level, which resulted in a judgment in petitioner's favor in the amount of $8,000. This award was reduced to judgment, but as stated, was discharged in the bankruptcy filed by plaintiff. In addition to his formal collection efforts, petitioner alleges several conversations with plaintiff, wherein he made demand for payment of his fees. He references this discussion in paragraph 7 of his second affidavit, which states the following:

---

3. John A. Fielding III, is an attorney previously employed by petitioner.

4. The Superior Court's opinion sets forth a comprehensive statement of the pertinent facts up to the time of the appeal. The Superior Court's statement of these facts is incorporated into this opinion.

"(7) On many occasions, Joseph Tomalonis told the affiant, Alan B. Ziegler, that Mr. Ziegler's legal fees in this case would be paid from his recovery in the lawsuit against Early American Builders Inc. Mr. Tomalonis stated to the affiant, Alan B. Ziegler, on numerous occasions, that 'You will get your money from the Greek.' The 'Greek' was Demetrios Zoucarious, the owner of Early American Builders Inc."

In his affidavit, John A. Fielding III, buttressed petitioners' account, stating the following:

"(9) From May of 1993 to November 2, 1996, many attempts were made in my presence to address the subject of the outstanding bill for attorney's fees with Mr. Tomalonis.

"(10) From May of 1993 to November 2, 1996, on the occasions when Mr. Ziegler would approach Mr. Tomalonis for payment, Mr. Tomalonis would indicate in my presence that Mr. Ziegler should look to any recovery from Early American Builders Inc. for payment of his fees.

"(a) on numerous occasions in my presence, Mr. Tomalonis would indicate that Mr. Ziegler should apply any fund created by recovery from the defendant to his outstanding debt with Mr. Ziegler by declaring, 'get it from the Greek,' or 'get your money from the Greek.'

"(b) By this, I understood Mr. Tomalonis to be identifying Dimitrios Zahariadas, the owner of Early American Builders Inc. and Early American Builders, Inc. as the source of money for Mr. Ziegler's attorney's fees."

Petitioner has not sustained his burden with these facts. For one, the statements allegedly made by plaintiff such

as, "Get your money from the Greek," are vague and equivocal. While plaintiff could have been referring to the escrowed funds, he also could have been speaking out of frustration or sarcasm or simply avoiding giving petitioner a direct answer. He could have had the belief that he could recover attorney's fees from defendant through a legal action. In any event, these bald statements do not support petitioner's assertion that plaintiff was offering or agreeing to the imposition of a charging lien upon the escrowed funds. There is no evidence that plaintiff understood or was advised of the nature and effect of a charging lien, in general, or vis-à- vis his bankruptcy action. Interestingly, plaintiff was never called as a witness to explain his statements, nor his understanding of the fee.

There is also insufficient evidence that petitioner agreed to look to the escrowed funds rather than the client for compensation. The language of *Recht (supra)* implies that petitioner can seek payment of fees from either the client directly, or from the funds, but not both. Petitioner cannot dispute that his fee agreement required payment on an hourly basis, initially from a retainer, then from invoices billed to the client directly. The fact that petitioner was constantly in contact with plaintiff questioning him about when he would be paid establishes that there was no agreement to look to the fund in lieu of direct payment. In *Recht*, the court noted that the fact that the attorney submitted a bill to and demanded payment of his client prior to creation of the fund secured by a jury trial supported the conclusion that an agreement for a charging lien never existed. (At pp. 139-40.)

This court is also troubled by the fact that no written agreement regarding a charging lien exists. As a result of the conversations, it would have been a mere formality for petitioner to prepare a written fee agreement for a charging lien, terminating the prior agreement and setting forth the new terms. If plaintiff was agreeable to such terms, as petitioner suggests, both parties could have signed the agreement and petitioner's rights would have been protected.

Further, the Rules of Professional Conduct require a written fee agreement in this circumstance. Rule 1.5(b) sets forth:

"When the lawyer has not regularly represented the client, the basis or rate of the fees shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation."

Petitioner noted that he regularly represented plaintiff in "numerous civil and criminal proceedings." (Amended affidavit of Alan B. Ziegler, paragraph 2.) However, he also alleges in his second affidavit at paragraph 3 that his first meeting with plaintiff was on May 27, 1993, when he was retained to file the collection action against defendant, resulting in the creation of the escrowed funds. Under 1.5(b), this particular engagement required a written fee agreement. The only written statement regarding a fee agreement appearing in the record is the initial correspondence from petitioner to plaintiff dated May 27, 1993. Thus, if you assume that petitioner is an attorney who complies with the Rules of Professional Conduct, then you would also assume that if an agreement for a charging lien had been reached between petitioner and plaintiff, that such an agreement would have been re-

32

duced to writing. Such was not the case here.[5] For the foregoing reasons, we enter the following order:

## ORDER

And now, January 29, 2003, upon consideration of the petition of Alan B. Ziegler, Esquire, to seek leave to apply lien funds to attorney's lien, and after hearing held, the same is hereby denied.

[5]. Even if plaintiff had been a regular client of petitioner at the time petitioner was retained on the collection matter, it is unlikely that petitioner could rely on a verbal charging agreement without violating the Code of Professional Conduct. The first words of 1.5(b), stating: "when the lawyer has not regularly represented the client," appear to permit attorneys to forego written fee agreements with regular clients when the arrangements for representation are on the "usual basis." Here, a charging fee agreement would be unique, not "regular." Thus, the spirit of 1.5(b), if not the letter, would support reducing a charging fee to writing for a regular client as well, under these facts.